IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRAVIS KINGSBERRY, : | |
| Petitioner : | |
| : | |
| vs. : | CIVIL NO. 1:CV-13-2466 |
| : | |
| J.E. THOMAS, WARDEN, : | (Judge Caldwell) |
| Respondent : | |
| : | |
| : | |

*M E M O R A N D U M*

I.  *Introduction*

Travis Kingsberry, an inmate at USP-Lewisburg in Lewisburg, Pennsylvania, has filed a pro se petition under 28 U.S.C. § 2241 challenging two disciplinary proceedings held while he was an inmate at FCI-Beckley in Beckley, West Virginia. As a result of the proceedings, Petitioner lost credit against his sentence for good conduct time. Petitioner claims his right to due process was violated in both proceedings. Petitioner also challenges his placement in the Special Management Unit (SMU) at Lewisburg, asserting that his transfer there from FCI-Beckley violated Federal Bureau of Prisons (BOP) policy and the Eighth Amendment.

II.  *Relevant Law*

Federal prisoners have a liberty interest in good time credits. *Lang v. Sauers*, 529 F. App'x 121, 122 (3d Cir. 2013)(nonprecedential). At a disciplinary hearing that may result in the loss of good time credits, due process requires that an inmate

"receive: (1) written notice of the charges at least 24 hours prior to a hearing; (2) an opportunity to call witnesses and present evidence in his defense; (3) an opportunity to receive assistance from an inmate representative; and (4) a written statement of the evidence relied on and the reasons for the disciplinary action." *Id.* at 123 (citing *Wolff v. McDonnell,* 418 U.S. 539, 563–71, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)).

Due process also requires that the Discipline Hearing Officer's (DHO's) decision be supported by "some evidence." *Id.* (quoting *Superintendent v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985)). A determination of whether there is some evidence to support the decision "does not require examination of the entire record, an independent assessment of the credibility of witnesses, or a weighing of the evidence." *Id.* (citing *Thompson v. Owens,* 889 F.2d 500, 502 (3d Cir. 1989)).

III.  *Background*

   A.  *Incident Report No. 2347477*

In an incident report, dated September 5, 2012, Petitioner was charged with fighting (a Code 201 violation) on August 8, 2012. (Doc. 13-1, ECF p. 8). On September 18, 2012, a hearing was held, (Doc. 13-1, ECF p. 13), and in a report dated November 16, 2012, the Discipline Hearing Officer (DHO) found him guilty. Petitioner was sanctioned by disallowance of 27 days of good conduct time and the imposition of 30-days disciplinary segregation.

In his report, the DHO listed the evidence upon which he based his decision. First, a Special Investigative Services (SIS) technician submitted a report

-2-

concerning a large scale fight that began on the morning of August 8, 2012.  As part of that report, the technician examined video surveillance that showed the following.  Petitioner was outside his cell on the upper tier observing two inmates fighting on the lower tier (which was part of the larger altercation).  Petitioner jumped down to the lower tier and repeatedly struck one of the inmates.  As Petitioner used the stairs to return to his cell, he could be observed pulling his white t-shirt outward as if looking for blood.  After he returned to his cell, Petitioner then put on a khaki shirt and left the unit for work.  Second, still shots from the video clearly showed Petitioner, wearing a white t-shirt, leave his cell on the upper tier, jump over the railing to the lower tier, enter the immediate area of the fight, and then walk back up the steps while looking down at his t-shirt.  Third, the injured inmate described as one of his assailants a tall inmate wearing a white t-shirt who punched and kicked him repeatedly.  (Doc. 13-1, ECF p. 15).

B. *Incident Report No. 2350707*

In an incident report, dated September 11, 2012, Petitioner was charged with possession of a weapon, fighting, and refusing an order on August 14, 2012.  (Doc. 13-1, ECF p. 18). On October 2, 2012, a hearing was held, (Doc. 13-1, ECF p. 13), and in a report dated November 5, 2012, the DHO found him guilty on all three charges.  On the charge of possession of a weapon (a Code 104 violation), Petitioner was sanctioned by disallowance of 40 days of good conduct time, forfeiture of 60 days of non-vested good conduct time, and 40 days of disciplinary segregation.  On the charge of fighting (a Code 201 violation), Petitioner was sanctioned by disallowance of 27 days of good

conduct time and imposition of 15 days of disciplinary segregation.  On the charge of refusing an order (a Code 307 violation), Petitioner was sanctioned by disallowance of 14 days of good conduct time and imposition of 10 days of disciplinary segregation.  (Doc. 13-1, ECF p.26).

       In his report, the DHO listed the evidence upon which he based his decision.  First, a correctional officer submitted a report stating that he and another officer came upon Petitioner and his cell mate on the night of August 14, 2012, and saw them fighting in their cell.  They both refused orders from this officer and the other officer to stop fighting.  Second, a third officer who observed the fight submitted a report confirming the first officer's report.  This officer added that the cell mate said that Petitioner hit him with a combination lock in his right hand.  The officer also added that another officer had searched the cell after the fight and found a bloody combination lock.  Third, another officer submitted a report stating that he observed the fight and the refusal to obey orders to stop.  (Doc. 13-1, ECF p. 24).  Fourth, medical reports on Petitioner and his cell mate indicated that the cell mate had several lacerations to his right cheek, two lacerations to his forehead, one laceration to his right scalp, several abrasions to the upper torso, and mild swelling and bruising on the right cheek.  Petitioner had a possible dislocated finger on his right hand.  (Doc. 13-1, ECF p. 25).

IV. *Discussion*

   A. *Due Process Was Satisfied in Connection With
      the Disciplinary Hearings*

In connection with the hearing on the first incident report, Petitioner makes the following due-process claims. First, the DHO relied on the allegation of gang affiliation and the statement of one of the white inmates to make a finding of guilt. Second, the DHO deliberately overlooked the surveillance video and the statement of Petitioner's staff representative that the video does not directly show Petitioner assaulting the other inmate. Third, the DHO's failure to discuss the staff representative's statement in his report and to mention the DHO's referral of Petitioner to the SMU at SCI-Lewisburg hampered Petitioner's ability to appeal the full sanctions as he could only appeal what was in the report. (Doc. 2, ECF p. 8). Fourth, the report was served on him about one month after the incident, "preventing him from collecting and preserving evidence and witnesses' statements," (Doc. 3, ECF p. 1), and his "staff representative was unable to adequately assist Petitioner due to lapse in time." (Doc. 3, ECF p. 2).

In connection with the hearing on the second incident report, Petitioner makes the following due-process claims. First, the DHO "relied on speculations and false claims" to make his finding of guilt rather than "conclusive facts and evidence." (Doc. 2, ECF pp. 7, 9). Second, the DHO overlooked the fact that if Petitioner had used a combination lock to inflict serious injuries that required staples to close a wound, Petitioner would have been charged with assault with serious injuries, a Code 101 violation. Third, the DHO imposed sanctions greater than recommended by the Unit

-5-

Disciplinary Committee and prison policy.  Fourth, the DHO knowingly considered a false medical report which stated that Petitioner had actually suffered a broken finger on the right hand even after the DHO had viewed the finger and saw no injury.  Fifth, the finding of guilt was not based on evidence or was not based on credible evidence: (1) there was no evidence of blood on the combination lock or if there was blood, whose blood it was; (2) the lock did not belong to Petitioner; (3) there was no fingerprint evidence on the lock indicating Petitioner had used it as a weapon; and (4) none of the investigative reports indicated that Petitioner had attached anything, such as a rope, to the lock to carry out the assault.

      Petitioner also argues, as he did with the first incident report, that the length of time between the incident and the incident report, about a month, prejudiced him by hampering his ability to locate witnesses and evidence and prevented his staff representative from assisting him.  Also common to both misconduct proceedings is Petitioner's argument that the loss of 168 days of good conduct time was excessive as BOP Program Statement 5270.10 allows only 54 days of good conduct time to be taken per year.

      In addressing Petitioner's claims, we will begin with the last two arguments. Due process only requires that the inmate receive the incident report more than 24 hours before the hearing; there is no requirement that he receive it within a certain time frame. Moreover, while Petitioner claims the delay prevented him and his staff representative from preparing defenses to the incident reports, Petitioner does not specify how he was

prejudiced.[1]  We therefore reject the claim based on delay in receiving the incident reports.

We also disagree with Petitioner's claim that the aggregate loss of 168 days of good conduct time was improper.  As Respondent points out, Program Statement 5270.09 establishes that this aggregate sanction was proper.  In both disciplinary proceedings, Petitioner was charged with fighting, a Code 201 violation, and listed in the Program Statement as a "high severity level" prohibited act.  (Program Statement 5270.09, p. 46).  The available sanctions for that type of act include disallowance of 14 to 27 days of credit for good conduct time and disciplinary segregation up to 6 months.  (*Id.*, p. 49).  In the first disciplinary proceeding, Petitioner was sanctioned for fighting by disallowance of 27 days of good conduct time and the imposition of 30-days disciplinary segregation.  In the second disciplinary hearing, Petitioner was sanctioned for fighting by disallowance of 27 days of good conduct time and imposition of 15 days of disciplinary segregation.  These sanctions are within the range of sanctions permitted for fighting.

The charge of possession of a weapon is a Code 104 violation and listed as a "greatest severity level" prohibited act.  (*Id.*, p. 44).  The available sanctions for that type of act include forfeiture and/or withholding of earned statutory good time or up to 100% of non-vested good conduct time, the disallowance of 27 to 41 days of credit for good conduct time and disciplinary segregation up to 12 months.  (*Id.*, p. 45).  Petitioner

---

[1]   Under 28 C.F.R. § 541.5(a), the inmate is "ordinarily" to receive the report within 24 hours of staff becoming aware of the inmate's involvement in the incident.  This is not a due-process requirement and not a rigid rule.

was sanctioned by disallowance of 40 days of good conduct time, forfeiture of 60 days of non-vested good conduct time, and 40 days of disciplinary segregation. These sanctions are within the range of sanctions permitted for possession of a weapon.

The charge of refusing an order is a Code 307 violation and listed as a "moderate severity level" prohibited act. (*Id.*, p. 49). The available sanctions for that type of act include the disallowance of 1 to 14 days of credit for good conduct time and disciplinary segregation up to 3 months. (*Id.*, p. 52). Petitioner was sanctioned by disallowance of 14 days of good conduct time and imposition of 10 days of disciplinary segregation. These sanctions are within the range of sanctions permitted for refusing to obey an order.

In making this claim, Petitioner contends that since he can only accrue good conduct time of 57 days per year (actually 54 days per year), *see* 18 U.S.C. § 3624(b), the DHO could not take away such time before he had earned it. (Doc. 3, ECF p. 3). However, as noted above, Program Statement 5270.09 does authorize disallowance of such time. He also argues that Program Statement 5270.10 prohibits the DHO from taking more than 54 days per year. (Doc. 3, ECF p. 3). However, that program statement deals only with placement in special housing units, not with sanctions for misconduct charges.

We turn now to Petitioner's due-process claims dealing specifically with the first disciplinary hearing. As noted those claims are as follows. First, the DHO relied on the allegation of gang affiliation and the statement of one of the white inmates to make a

finding of guilt. Second, the DHO deliberately overlooked the surveillance video and the statement of Petitioner's staff representative that the video does not show Petitioner assaulting the other inmate. Third, the DHO failed to discuss the staff representative's statement in his report and the DHO's referral of Petitioner to the SMU at SCI-Lewisburg. As a result, Petitioner was hampered in his ability to appeal the full sanctions as he could only appeal what was in the report. (Doc. 2, ECF p. 8).

The first claim lacks merit. The DHO did not rely on any purported gang affiliation in making his finding of guilt. And the other inmate may have been white, but the race of the witness by itself is not relevant to a due-process claim. The second claim lacks merit. The DHO did discuss the staff representative's argument concerning the limitations of the video. (Doc. 13-1, ECF pp. 13 and 16). This argument is also an attempt to relitigate the merits of the disciplinary charge, which is beyond the scope of the due-process claim. The third argument lacks merit. Again, the DHO did discuss the staff representative's argument. Additionally, the transfer claim is not cognizable in these proceedings, as will be discussed below.

As noted, Petitioner's due-process claims dealing specifically with the second disciplinary hearing are as follows. First, the DHO "relied on speculations and false claims" to make his finding of guilt rather than "conclusive facts and evidence." Second, the DHO overlooked the fact that if Petitioner had used a combination lock to inflict serious injuries that required staples to close a wound, Petitioner would have been charged with assault with serious injuries, a Code 101 violation. Third, the DHO imposed

-9-

sanctions greater than recommended by the Unit Disciplinary Committee and prison policy.  Fourth, the DHO knowingly considered a false medical report which stated that Petitioner had actually suffered a broken finger on the right hand even after the DHO had viewed the finger and saw no injury.  Fifth, the finding of guilt was not based on evidence or was not based on credible evidence: (1) there was no evidence of blood on the combination lock or if there was blood, whose blood it was; (2) the lock did not belong to Petitioner; (3) there was no fingerprint evidence on the lock indicating Petitioner had used it as a weapon; (4) none of the investigative reports indicated that Petitioner had attached anything, such as a rope, to the lock to carry out the assault.

        The first claim lacks merit.  Our recitation of the DHO's discussion of the evidence relied on indicates there was some evidence to support the finding of guilt, as the finding was based on the reports of guards who saw the fight and the medical report of the cell mate's injuries.  The third argument concerning the aggregate number of good-conduct-time days lost has been dealt with above.  None of the remaining claims indicate that the due-process rights Petitioner had in his prison disciplinary proceedings were violated.  They merely reargue the merits.  We add that the fourth claim is factually wrong.  The DHO did not rely on a medical report inaccurately indicating that Petitioner had a broken finger.  Instead, the medical report indicated only a possibly dislocated finger, (Doc. 13-1. ECF p. 25), and the DHO noted as much.  (Doc. 13-1, ECF p. 26).

B.  *The Claim Concerning the Transfer to SCI-Lewisburg's SMU Cannot Be Litigated in a Habeas Petition*

Petitioner claims that his transfer to the SMU at SCI-Lewisburg violated Program Statements 5270.10 and 5800.08 and the Eighth Amendment. He claims the conditions in the SMU are atypical. (Doc. 3, ECF pp. 2-3).

A challenge to placement in SMU is not cognizable in a habeas proceeding as it is not a challenge to a conviction, a sentence, the duration of imprisonment. *Cardona v. Thompson*, ___ F. App'x ___, ___, 2013 WL 6801086, at *2 (3d Cir. 2013)(nonprecedential), or the execution of a sentence. *Cardona v. Bledsoe*, 681 F.3d 533, 535 (3d Cir. 2012). Instead, it is a conditions-of-confinement claim. *Thompson*, *supra*, 2013 WL 6801086, at *2. Such claims must be brought in a civil-rights action. We will deny this claim but without prejudice to Petitioner's filing a civil-rights lawsuit. We express no opinion on the merits of such a suit.

We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: March 20, 2014